USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 4/1/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: <br><br> AURORA COMMERCIAL CORP., <br><br> Debtor. | No. 19-B-10843 (SCC) |
| NANCY M. HORNER, <br><br> Appellant, <br><br> v. <br><br> AURORA COMMERCIAL CORP., <br><br> Appellees. | No. 20-CV-742 (RA) <br><br> AMENDED <br> OPINION AND ORDER |

RONNIE ABRAMS, United States District Judge:

Appellant NanCy Horner has filed two claims in the Chapter 11 bankruptcy proceedings of Appellees Aurora Commercial Corporation ("ACC") and Aurora Loan Services LLC ("ALS").[1]  She seeks several million dollars in damages for harm caused by an allegedly fraudulent deed of trust of which Appellees were at one time the beneficiaries.  Upon finding that the validity of the deed of trust had been litigated before, Judge Chapman of the United States Bankruptcy Court for the Southern District of New York ("the Bankruptcy Court") held that Appellant's claims were barred by res judicata.  Appellant now appeals that decision.  For the reasons provided below, the decision of the Bankruptcy Court is AFFIRMED.

---

[1] ALS is owned in its entirety by ACC, which is the sole named Appellee in this case.  *See* Answering Br. Corporate Disclosure Statement.  Appellant does not raise separate claims against ALS or ACC, treating them instead as one entity.  This opinion will thus use the term "Appellees" to refer to both ACC and ALS and will specify only when referring to one entity but not the other.

## BACKGROUND[2]

On or about July 13, 2005, Appellant NanCy Horner executed a note for $825,000 and a deed of trust in favor of Lehman Brothers Bank, FSB. *See* Dkt. 23 Ex. 10 at 4–19 (2005 Deed of Trust). The deed of trust identified as security interest for the note Appellant's property located at 320 11th Street in Huntington Beach, California ("the Property"). *Id*. at 4. The deed of trust was recorded on July 19, 2005. *Id*. at 3. On June 20, 2011, the deed of trust was assigned to Appellee ALS. *Id*. at 25 (2011 Corporate Assignment of Deed of Trust). This assignment was recorded on June 30, 2011. *Id*. ALS then assigned its interest in the Property and deed of trust to Nationstar Mortgage LLC on June 29, 2012. *Id*. at 30 (2012 Corporate Assignment of Deed of Trust). This assignment was recorded on October 2, 2012. *Id*. at 29.

On August 17, 2012, Appellant filed a complaint in the California Superior Court seeking to quiet title to the Property ("the 2012 Action"). Bankr. Dkt. 117 at 56–63 (Complaint in the 2012 Action). She named Appellee ALS as a defendant in this action, among others. *Id*. at 56. In her complaint she asserted that "on or about 07/13/2005 [she] made, executed or otherwise signed and or delivered a document entitled 'Deed of Trust' . . . which was incorrect, false, and or otherwise misplaced and untrue, due to [the defendants'] actions in creating and or otherwise generating said [deed of trust] as well as their subsequent actions regarding said [deed of trust] as alleged herein." *Id*. at 62 ¶ 10. On this basis, she claimed that that "none of the alleged Parties hereto claiming to hold or possess any [deed of trust] herein can establish that they are entitled to, or possess any Right, Interest, or Beneficial interest" in the Property, *id*. at 63 ¶ 13, and thus "no Party herein, notwithstanding Plaintiff, have, possess or hold any Legal or Equitable interests and or rights to and regarding" the Property, *id*. at 63 ¶ 14. On July 8, 2013,

---

[2] The Court draws the following facts from the appendix filed in conjunction with Appellant's opening brief, Dkt. 23 Ex. 2–13, and the appendix filed in conjunction with Appellees' answering brief, Dkt. 25 Ex. 1. Appellant's appendix was submitted in thirteen parts, but several parts contain multiple documents with inconsistent pagination. For this reason, citation to the parties' appendices will utilize external, rather than internal, pagination.

2

the California Superior Court held a lengthy hearing on this matter, at which Appellant was represented by counsel. Dkt. 23 Ex. 11 at 45–100 (transcript from hearing in 2012 Action). The court found that Appellant had failed to present any evidence that would entitle her to quiet title. *Id*. at 73, 77. Accordingly, on August 15, 2013, the California court entered a judgment of non-suit in favor of the defendants. Dkt. 23 Ex. 6 at 76–77 (judgment in the 2012 Action).

In 2017, after the Property was foreclosed upon due to Appellant's non-payment and default on the note, Appellant filed another lawsuit in the California Superior Court challenging the validity of the deed of trust and the foreclosure proceedings ("the 2017 Action"). *Id*. at 84–100 (complaint in the 2017 Action). On July 11, 2019, the court dismissed that case with prejudice. Dkt. 23 Ex. 12 at 89–90 (judgment in the 2017 Action). Appellant appealed that decision. *Id*. at 92 (notice of appeal of 2017 Action).

On March 24, 2019, Appellees filed for Chapter 11 bankruptcy. Bankr. Dkt. 1. On June 10, 2019, Appellant filed Proofs of Claim 60 and 65 seeking $6,081,564 from Appellees—including $4,500,000 in punitive damages—as well as declaratory judgment quieting title on the Property. Dkt. 23 Ex. 2 (Proof of Claim 60 against ACC); Dkt. 23 Ex. 3 (Proof of Claim 65 against ALS). Appellees filed a motion to disallow the claims on August 14, 2019. Bankr. Dkt. 117 (Appellees' Motion to Disallow Claims). Alleging that Appellees had submitted new evidence and made new arguments in their reply brief before the Bankruptcy Court, Appellant attempted to submit a sur-reply. Bankr. Dkt. 267 (Appellant's Sur-reply). The Bankruptcy Court held a hearing on the matter on October 2, 2019, during which Appellant represented herself *pro se*. Dkt. 25 Ex. 1 (transcript from Bankruptcy Court hearing). At the hearing, the Bankruptcy Court informed Appellant that it would not entertain her sur-reply because she had failed to obtain permission to file it. *Id*. at 40 ("[T]he rules of the Court don't provide for the filing of a surreply. Had you wished to file one, you needed to ask Court permission. You did not do that, and therefore I am not going to consider what's set forth in your surreply."). Appellant

then made a request for an evidentiary hearing, which the Bankruptcy Court also denied. *Id*. at 51–52. On January 7, 2020, the Bankruptcy Court entered judgment disallowing Claims 60 and 65 and expunging them in their entirety. Dkt. 23 Ex. 4 at 8 (decision of the Bankruptcy Court). The court's decision rested largely on its conclusion that Appellant's claims were precluded by the 2012 Action under the doctrine of res judicata. *Id*. at 7–8. The court also found that after ALS assigned its interest in the Property and deed of trust to Nationstar in 2012, it had no further relationship with the Property. *Id*.

Appellant now appeals the Bankruptcy Court's decision.

## DISCUSSION

Appellant challenges several of the Bankruptcy Court's rulings. The Court will address each in turn.

### I. Application of Res Judicata

Appellant first asserts that the Bankruptcy Court erred in holding that res judicata precludes the claims she has raised here. Opening Br. at 30–36. The Court disagrees. Upon review of this question of law de novo, *Davidson v. AMR Corp. (In re AMR Corp.)*, 566 B.R. 657, 663 (S.D.N.Y. 2017), the Bankruptcy Court's ruling is affirmed.

"The preclusive effect of a state court judgment in a subsequent federal lawsuit generally is determined by the full faith and credit statute," *Marrese v. American Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380 (1985), which dictates that state judicial proceedings "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken," 28 U.S.C. § 1738. Accordingly, a federal court must look to the preclusion law of the state in which the earlier judgment was rendered to determine whether preclusion applies in the later-filed federal action. *Marrese*, 470 U.S. at 380. Under California law, a former judgment has claim preclusive effect if "(1) a claim or issue raised in the present action is identical to a

claim or issue litigated in a prior proceeding; (2) the prior proceeding resulted in a final judgment on the merits; and (3) the party against whom the doctrine is being asserted was a party or in privity with a party to the prior proceeding." *Boeken v. Philip Morris USA, Inc.*, 230 P.3d 342, 348 (Cal. 2010).

Appellant does not dispute that the parties here were both party to the 2012 Action. Opening Br. at 18 (noting that the 2012 Action was against ALS, among others). That action resulted in a final judgment on the merits following a lengthy hearing. Dkt. 23 Ex. 11 at 94–98 (transcript from hearing in 2012 Action).[3] The Court will thus focus its analysis on the third res judicata factor: whether the two proceedings involve identical claims.

To make this determination, California courts use the "primary rights" theory, which the California Supreme Court has described as follows:

> [T]he "cause of action" is based upon the harm suffered, as opposed to the particular theory asserted by the litigant. Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. "Hence a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different legal ground for relief."

*Slater v. Blackwood*, 543 P.2d 593, 594–95 (Cal. 1975) (internal citations omitted) (emphasis omitted). Examining the complaint filed in the 2012 Action and the Proof of Claim Appellant filed here reveal that both actions are premised upon "the same injury to the same right," even if the relief sought is not identical.

In the 2012 Action, Appellant sought to quiet the title on the Property against the adverse claims brought by several defendants, including ALS. Bankr. Dkt. 117 at 63 ¶ 15. In support of her claim, she

---

[3] Although she does not explicitly make this argument, Appellant implies in her opening brief that the 2012 Action was resolved on mootness grounds rather than the merits. Opening Br. at 31. Because Appellant "fails adequately to present [this] argument[]" in her briefs, the Court will "consider [it] abandoned." *State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004). Even if it were not abandoned, this argument would fail. The court in the 2012 Action granted a judgment of non-suit upon finding that the errors Appellant alleged in the deed of trust did not entitle her to quiet title as a matter of law. Dkt. 23 Ex. 11 94–98 (transcript from hearing in 2012 Action) (informing Horner that "if everything you, the Plaintiff, are alleging is true, the law still says you can't have what you ask for"). This was a decision on the merits.

5

alleged that the deed of trust she executed "on or about 07/13/2005 . . . was incorrect, false, and or otherwise misplaced and untrue, due to [the defendants'] actions in creating and or otherwise generating said [deed of trust] as well as their subsequent actions regarding said [deed of trust] as alleged herein." *Id*. at 62 ¶ 10. On this basis, she alleged that "no Party herein, notwithstanding [Appellant], have, possess or hold any Legal or Equitable interests and or rights to and regarding" the Property. *Id*. at 63 ¶ 14. In her claim before the Bankruptcy Court, Appellant again sought to quiet the title on the Property. Dkt. 23 Ex. 2 (Proof of Claim 60) at 13 ¶ 26(d); *id*. Ex. 3 (Proof of Claim 65) at 13 ¶ 26(d). She also sought money damages. *Id*. Ex. 2 at 13 ¶ 26(c); *id*. Ex. 3 at 13 ¶ 26(c). . This time, she alleged as the basis of her claim that the "July 13, 2005 Note and purported Deed of Trust . . . were forged and counterfeited" and that Defendant ALS failed to inform her that she was not entering the "conventional mortgage loan" she intended to enter into at that time. *Id*. Ex. 2 at 10–12 ¶¶ 6, 8–10, 18; *id*. Ex. 3 at 10–12 ¶¶ 6, 8–10, 18.

The two lawsuits are not identical in every way: the former sought only to quiet title, while the later seeks both quiet title and damages. Further, in her 2012 complaint, Appellant did not explicitly raise an allegation of forgery like she did here, although she briefly raised the issue in oral argument. *See* Dkt. 23 Ex. 11 at 79, 88 (transcript from hearing in 2012 Action) (seeking to present evidence of purported forgery to the court). Yet the "right" alleged to have been violated in each action is the same: her right to possess the property unencumbered by a legally deficient debt. *See Jones v. Wells Fargo Bank N.A.*, 2013 Cal. App. Unpub. LEXIS 5520, 2013 WL 4079280 (Cal. Ct. App. Aug. 2, 2013) ("[T]he primary right in this case is *neither* the legal theories of recovery *nor* the remedy sought. It is simply the plaintiff's right to be free from the particular injury suffered." (emphasis in original)); *see also Olsen v. Breeze, Inc.*, 48 Cal. App. 4th 608, 625 (Cal. Ct. App. 1996) ("Examples of primary rights include the right to be free from personal injury, the right to possession of real property, the right to possession of personal property, and the right to performance of a contractual obligation." (internal citations omitted)).

The California Court of Appeals' decision in *Lucore v. U.S. Bank, N.A.* is instructive here. *See* 2014 Cal. App. Unpub. LEXIS 9031 (Cal. Ct. Appl. Dec. 19, 2014). In that case, the plaintiffs had previously sued to cancel a foreclosure on their property alleging, *inter alia*, that the defendants had "fil[ed] false documents" and engaged in intentional misrepresentation. *Id*. at *3. Two years later, the plaintiffs brought another action, asserting claims for "mortgage fraud, breach of contract, 'fraudulent documentation recordation' and other violations of law." *Id*. at *5. They argued that, under the primary rights theory, the two actions did not stem from the same cause of action because the second action "raised issues not previously determined, including the fraudulent assignment of the deed of trust, notary fraud, [and] forgery of the assignment documents." *Id*. at *8. The court disagreed, concluding that "the claims asserted in the [prior] action and the claims asserted in the present action do indeed set out common rights: the right to title to their property due to an invalid or defective assignment of the rights under their loan and flaws in the securitization process." *Id*. at *21–22. That the plaintiffs only specifically alleged forgery in the second action had no bearing on this conclusion. *Id*. at *17–18.

Here, the facts compel the same conclusion. Both lawsuits are premised, at least in part, on the same underlying allegation (a misrepresentation was made in the July 13, 2005 deed of trust) that resulted in the violation of the same primary right (the right to be free of a legally deficient encumbrance on one's property). In other words, the injury in each was the same.

To the extent that Appellant contends that the validity of the 2005 deed of trust was not expressly addressed in the decision on the 2012 action, this argument confuses the doctrines of res judicata and collateral estoppel. This confusion is somewhat understandable; "[p]reclusion law is one of the most oft-confused doctrines in civil procedure." *Ferring B.V. v. Serenity Pharms., LLC*, 391 F. Supp. 3d 265, 283 n.7 (S.D.N.Y. 2019). "[T]he doctrine of collateral estoppel bars a party from relitigating 'an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point.'" *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (alterations

7

adopted). The doctrine of res judicata, on the other hand, "operates to prevent the parties or their privies to a prior action from litigating any matter that was or could have been decided in a previous suit." *Stone v. Williams,* 970 F.2d 1043, 1054 (2d Cir. 1992), *cert. denied,* 113 S. Ct. 2331 (1993). That the court did not expressly determine the validity of the 2005 deed of trust in its decision in the 2012 action would prevent collateral estoppel from applying here, but it does not prevent the application of res judicata in this case.

In sum, because the instant action and the 2012 Action stem from the same harm, under California's "primary rights" theory they concern the same cause of action. The Bankruptcy Court's application of res judicata here was thus proper, and the Bankruptcy Court's holding on this issue is affirmed.

## II. Request for an Evidentiary Hearing[4]

Appellant also appeals the Bankruptcy Court's decision denying her request for an evidentiary hearing on Appellees' objection to her claims. Opening Br. at 38. "Bankruptcy courts have the discretion to decide an issue without holding an evidentiary hearing, and a district court can reverse such a decision only if it amounts to an abuse of discretion." *Gordon v. Tese-Milner (In re Gordon)*, 577 B.R. 38, 49 (S.D.N.Y. 2017). "A bankruptcy court does not abuse its discretion in reaching a decision without holding an evidentiary hearing where 'the record provided ample evidence on which the court could make such a decision.'" *See Halkias v. Great Atl. & Pac. Tea Co., Inc. (In re Great Atl. & Pac. Tea Co., Inc.)*, 618 B.R. 57, 65 (S.D.N.Y. July 14, 2020) (quoting *C-TC 9th Ave. P'ship v. Norton Co.*, 113 F.3d 1304, 1313 (2d Cir. 1997)); *see also Wilmington Trust Co. v. AMR Corp. (In re AMR Corp.)*, 490 B.R.

---

[4] While Appellant makes this argument in her opening brief, she failed to raise this issue in her statement of issues pursuant to Federal Rule of Bankruptcy Procedure 8009. *See* Dkt. 7 (Appellant's Statement of Issues). Because the issue has been fully briefed by the parties, and no prejudice appears to have resulted from the failure to include the issue in the statement of issues, the Court will not consider the issue waived for appellate consideration. *See Weisfelner v. Blavatnik (In re Lyondell Chem. Co.)*, 585 B.R. 41, 57 n.5 (S.D.N.Y. 2018).

470, 479 (S.D.N.Y. 2013) ("It is unnecessary to conduct an evidentiary hearing on a contested matter unless there are disputed issues of material fact that a Bankruptcy Court cannot decide based on the record.").

Appellant signals in her opening brief that, if she had been granted an evidentiary hearing, she would also have presented evidence of "a pending appeal in the 2017 Action which bears on these proceedings." Opening Br. at 38. But because the Bankruptcy Court found that Appellant's claims are precluded by the 2012 Action, additional evidence pertaining to the 2017 Action would have had no effect on the Bankruptcy Court's decision. In her reply brief, Appellant further argues that if she had been granted an evidentiary hearing, she would have also presented evidence that she continued to do business with third party Aurora Loan Services Inc. after it ceased to exist. Reply Br. at 19–20. Yet because Aurora Loan Services Inc. is not a party to this action, the Court again struggles to see how this additional evidence would have had any effect on the Bankruptcy Court's decision. Finally, Appellant contends that "[a]n evidentiary hearing would have readily established the liability of ACC for Proof of Claim No. 60," *id.* at 15, but fails to proffer facts to support this contention. In sum, Appellant has not presented any grounds on which this Court can find the Bankruptcy Court abused its discretion in denying Appellant an evidentiary hearing.

Appellant asserts that the Bankruptcy Court's decision to "dispose of [her] claim without allowing her to submit evidence, as requested, deprived [her] of her rights to full and fair hearing guaranteed by the Fifth Amendment to the Constitution of the United States." *Id*. at 14. This argument misconstrues the actions of the Bankruptcy Court. Appellant was permitted to submit evidence in support of her proofs of claim; indeed, examination of the Bankruptcy Court's docket in this case reveals that she did just that. *See*, *e.g.*, Bankr. Dkt. 252 (Appellant's reply brief in response to the motion to disallow Appellant's claims, filed with the declaration of Jared Borriello and exhibits attached). The Bankruptcy Court's decision here was to deny her request to submit *additional* evidence on top of what

9

was already submitted. Denying Appellant the right to be heard would certainly violate due process; but the Constitution does not mandate a litigant be allowed endless opportunities to bolster her claim.[5]

For these reasons, the Appellate Court's decision to deny an evidentiary hearing is affirmed.

### III. Challenge to Factual Findings

Appellant also appeals several of the Bankruptcy Court's factual findings. A district court reviews a bankruptcy court's findings of fact for clear error. *See ACC Bondholder Group v. Adelphia Comms. Corp (In re Adelphia Comms. Corp.)*, 367 B.R. 84, 90 (S.D.N.Y. 2007). A finding is "clearly erroneous" when the reviewing court is "left with the definite and firm conviction that a mistake has been committed." *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). Appellant bears the burden of demonstrating clear error. *Ivers v. Ciena Capital LLC (In re Ciena Capital LLC)*, 440 B.R. 47, 52 (S.D.N.Y. 2010). Here, Appellant has failed to carry this burden for either of the factual findings she now challenges.

First, she disputes the finding that Appellees did not have a continuing relationship with Appellant or the Property after 2013. Opening Br. at 36–37; *see also* Dkt. 23 Ex. 4 at 7 (decision of the Bankruptcy Court, finding that "After th[e] assignment [from ALS to Nationstar] occurred, ACC and ALS had no further relationship with the Property"). Appellant makes this allegation in a single paragraph in her opening brief, and does not reassert it in her reply brief. She cites nothing from the record that would support the conclusion that the Bankruptcy Court's finding on this matter was erroneous. Considering the record as a whole, the Court can find no basis that might have left it with

---

[5] Appellant also indicates in her opening brief that she views the Bankruptcy Court's denial of her proposed sur-reply a violation of due process. *See* Opening Br. at 12. Appellant failed to raise this issue in her statement of issues pursuant to Federal Rule of Bankruptcy Procedure 8009, *see* Dkt. 7 (Appellant's Statement of Issues), and unlike with her claim concerning the evidentiary hearing, mentions it only briefly in her submissions to this Court. She has thus waived this argument on appeal. Even if this argument were not waived, however, it would fail. Appellant has not provided—nor has the Court found—any legal support for the contention that denial of a sur-reply violates due process. *See Moreno-Godoy v. Gallet Dreyer & Berkey, LLP*, 14-CV-7082 (PAE), 2015 U.S. Dist. LEXIS 133582, 2015 WL 5737565, at *8 (S.D.N.Y. Sept. 30, 2015) ("The decision to grant a requested sur-reply is left to the 'sound discretion of the court.'").

"the definite and firm conviction that a mistake has been committed." *United States Gypsum Co.*, 333 U.S at 395.

Appellant similarly alleges that the Bankruptcy Court erred in declining to find that a third entity—Aurora Loan Services, Inc.—"acted concurrently and in concert with ACC and ALS against" her and the Property. Opening Br at 37. She notes that Aurora Loan Services, Inc. was a predecessor entity to ALS and it was named on the First Payment Notice she signed in 2005, a fact that Appellees acknowledge. Reply Br. at 19 (citing Answering Br. at 19–20 & n.10). Yet Appellant nonetheless fails to assert facts demonstrating that Aurora Loan Services, Inc. "acted concurrently and in concert with ACC and ALS against" her and the Property.

To support her claim, Appellant argues that, if permitted to have an evidentiary hearing, she would have produced documents that show "fraudulent conduct of [ALS and ACC] and their parent company, Lehman Brothers Holdings, Inc. (LBHI) continuing to use the identity of [Aurora Loan Services, Inc.] while LBHI was proceeding in Chapter 11 Bankruptcy Case No. 08-13555 before the very same Bankruptcy Judge who is presiding in the underlying Bankruptcy Cases." Reply Br. at 21. As a preliminary matter, this evidence was not on the record before the Bankruptcy Court, and therefore cannot support a finding that the Bankruptcy Court made an erroneous finding. *See Electronic Switching Industries, Inc. v. Faradyne Electronics Corp.*, 833 F.2d 418, 423–24 (2d Cir. 1987) (limiting review of a district court's factual findings to the record that was before that court). Even if it were on the record, though, this evidence seemingly has no connection to Appellant, and the Court struggles to see how it would show that Aurora Loan Services, Inc. "acted concurrently and in concert with ACC and ALS against" Appellant and the Property. Accordingly, Appellant has not carried her burden of demonstrating that a clear error has been committed.

### IV. Motion to Strike

Lastly, Appellant moves in her reply brief to strike two paragraphs of Appellees' opposition brief, in which Appellees assert that Appellant's appeal of the California court's decision in the 2017 Action has been dismissed. *See* Reply Br. at 7 (citing Answering Br. at 11, 13).

Motions to strike "are not favored and will not be granted unless it is clear that the allegations in question can have no possible bearing on the subject matter of the litigation." *Lennon v. Seaman*, 63 F. Supp. 2d 428, 446 (S.D.N.Y. 1999). To prevail on a motion to strike, the moving party must demonstrate that: "(1) no evidence in support of the allegations would be admissible; (2) that the allegations have no bearing on the issues in the case; and (3) that to permit the allegations to stand would result in prejudice to the movant." *Brady v Basic Research, L.L.C.*, 101 F Supp 3d 217, 225 (E.D.N.Y. 2015) (citing *Roe v. City of New York*, 151 F. Supp.2d 495, 510 (S.D.N.Y. 2001)).

Even if these allegations are incorrect, they have no bearing on the resolution of this action. Appellant argues that if her appeal of the 2017 Action is ongoing, then the 2017 Action cannot have claim preclusive effect here. *See* Reply Br. at 7. But because the Court has determined that the decision in the 2012 Action has claim preclusive effect here, it need not decide whether any of Appellant's other lawsuits do as well. Therefore, even a misstatement about the pendency of the 2017 Action could not have resulted in prejudice here. The motion to strike is thus denied.

### V. Request For Judicial Notice

On a final note, Appellant has asked this Court to take judicial notice of 23 publicly-available records, including court filings in several of her prior lawsuits and information pertaining to Appellees' bankruptcy petitions. *See* Dkt. 24; Dkt. 36. Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In the context of an

appeal from the bankruptcy court, however, a district court may not consider evidence outside the bankruptcy court's record. *Fletcher v. Ball (In re Soundview Elite, Ltd.)*, No. 15-CV-5666 (KPF), 2016 U.S. Dist. LEXIS 38494, 2016 WL 1178778, *7 (S.D.N.Y. Mar. 23, 2016) (citing *In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 389 B.R. 325, 339 (S.D.N.Y. 2008)) ("[T]he district court may not consider evidence outside the record below."). The motion to take judicial notice is thus denied. The Court notes, however, that because several of the documents for which Appellant seeks judicial notice can already be found on Bankruptcy Court's record, it need not take judicial notice in order to consider them now. *See*, *e.g.*, Dkt. 36 at 7 (Voluntary Petition for Bankruptcy filed by Appellee ACC); Bankr. Dkt. 1 (same).

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision is affirmed. The Clerk of Court is respectfully directed to close this case.

SO ORDERED.

Dated: April 1, 2021
       New York, New York

                                        RONNIE ABRAMS
                                        United States District Judge